UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
INSIDE CONNECT, INC. d/b/a JAIL CALLS,

                                        Plaintiff,

                - against -                                          **OPINION AND ORDER**

                                                                     No. 13-CV-1138 (CS)
BRIAN FISCHER, JOSEPH F. BELLNIER, JEFFREY
MCKOY, PATTY NELSON, GARY E. BAXTER,
PATRICIA LECONEY, WILLIAM CONNOLLY, JOSEPH
T. SMITH, WILLIAM LEE and JOHN DOES 1-20,

                                        Defendants.
-----------------------------------------------------------------------x

<u>Appearances:</u>

Frederick J. Martorell
Brooklyn, New York

John B. Messenger
Rochester, New York
*Counsel for Plaintiff*

Christina Chinwe Okereke
Office of New York State Attorney General
New York, New York
*Counsel for Defendants*

<u>Seibel, J.</u>

        Before the Court is the Motion to Dismiss of Defendants Brian Fischer, Joseph F.

Bellnier, Jeffrey McKoy, Patty Nelson, Gary E. Baxter, Patricia LeConey, William Connolly,

Joseph T. Smith, William Lee and John Does 1-20, all current or former employees of the

Department of Corrections and Community Supervision ("DOCCS"). (Doc. 52.)  Defendants

move, in the alternative, for summary judgment.  (*Id.*)  For the reasons set forth below,

Defendants' Motion is GRANTED.

## I. <u>BACKGROUND</u>

### A. <u>Factual Background</u>

For purposes of Defendants' Motion, I accept as true the facts (but not the conclusions) as set forth in Plaintiff's Amended Complaint ("AC"), (Doc. 27).

Plaintiff publishes a one-page flyer called "Inmate News 4DOCS" or "DOCS Inmate News" (hereinafter, "Inmate News").  (AC ¶ 15; *see id.* Ex. E at 4 ("Inmate News").)[1]  At the top of the flyer there are three sentences purporting to describe the "Journal of prisoners [*sic*] on Prisons" above a bold headline stating "Inmate Phones and Collect to a Family's Cell!"  (*See id.* Ex. E at 4.)[2]  Below the heading – representing about 75% of the page – are three paragraphs about the telephone service, Jail Calls, that Plaintiff offers to inmates and their families.  (*See id.*) The flyer advertises, among other things, that "[i]f you . . . have a block when you call your loved one . . . [s]top this today and have your loved one call Jail Calls . . . ."  (*See id.*)  Plaintiff alleges that it has encountered difficulty over the past several years getting copies of Inmate News delivered to its intended recipients at New York State correctional facilities.  (*Id.* ¶ 16.) Plaintiff maintains that DOCCS has no basis for refusing to deliver its flyers, and that this refusal violates Plaintiff's First Amendment right to communicate with inmates.  (*Id.* ¶¶ 25, 40.)

Defendants are Brian Fischer, former Commissioner of DOCCS,[3] Joseph F. Bellnier, Deputy Commissioner of DOCCS, Jeffrey McKoy, Deputy Commissioner for Program Services

---

[1] A copy of the flyer is attached to the Amended Complaint as Exhibit E, although the attachment is mistakenly labeled as "Exhibit B."  (*See* AC Ex. E.)

[2] As discussed below, the information regarding the Journal appears to be simply window-dressing designed to make the flyer look less like commercial speech – *e.g.*, it contains no information about how an interested reader could obtain or submit to the Journal.  (*See* AC Ex. E at 4.)

[3] Fischer was the Commissioner of DOCCS when Plaintiff initiated this action but apparently retired from this position on April 30, 2013.  (*See* Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint, or in the Alternative for Summary Judgment ("Ds' Mem."), (Doc. 54), 10; Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Amended Complaint, or in the Alternative for Summary Judgment ("Ds' Reply Mem."), (Doc. 58), 7.)  Fischer's retirement does not moot Plaintiff's claims for declaratory

of DOCCS, Patty Nelson, Superintendent of the Taconic Correctional Facility ("Taconic"), Gary

E. Baxter, Mailroom Supervisor at Taconic, Patricia LeConey, Superintendent of the Cape

Vincent Correctional Facility ("Cape Vincent"), William Connolly, Superintendent of the

Fishkill Correctional Facility ("Fishkill"), Joseph Smith, Superintendent of the Shawangunk

Correctional Facility ("Shawangunk"), William Lee, Superintendent of the Green Haven

Correctional Facility ("Green Haven") and John Does 1-20.  (*Id.* ¶¶ 5-14.)  Plaintiff has sued

Defendant Fischer in his official and individual capacities, and the remaining defendants in their

individual capacities.  (*Id.*)

DOCCS has regulations governing the inmate use of telephones.  These policies are

found in Section 723 of Title 7 of the New York Compilation of Codes, Rules and Regulations

("NYCCRR") and in DOCCS Directive No. 4423.  Section 723.3(e)(11) provides:

> Inmate telephone calls and telephone conversations shall be
> restricted to the telephone number dialed or otherwise placed by or
> for the inmate, and shall terminate at the billing address of the
> called party. Telephone call forwarding or third-party phone calls
> are prohibited.

7 NYCCRR § 723.3(e)(11).  When Plaintiff initiated this case, section 723.3(e)(12) provided:

> Inmates are prohibited from placing calls to wireless
> communications devices, e.g., cellular or PCS telephones, pagers,
> etc. except that an emergency call to such a device may be
> authorized under subdivision (g) of this section.

*Id.* § 723.3(e)(12).[4]

---

and injunctive relief, however, because, under Federal Rule of Civil Procedure 25(d), a public "officer's successor is automatically substituted as a party" when an "officer who is a party in an official capacity . . . ceases to hold office while the action is pending."  Fed. R. Civ. P. 25(d).  Fischer's successor is Acting Commissioner of DOCCS, Anthony J. Annucci, who, for purposes of this opinion, is substituted for Fischer when sued in his official capacity.

[4] As explained below, DOCCS has revised this regulation to allow inmate calls to cell phones.  (*See* Declaration of Jeff McKoy ("McKoy Decl."), (Doc. 59), ¶¶ 4-5.)  DOCCS also modified its regulations such that inmate calls placed via a phone service company that automatically forwards calls to a call recipient will not, standing alone, violate § 723.3(e)(11).  (*Id.*)  Although I cannot consider these changes on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I may consider them on Defendants' motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), as discussed below.

Plaintiff alleges that its telephone service works by "assigning [a] customer a new number," after which inmate "[c]alls to the new Jail Calls number are . . . connected to the customer's telephone."  (AC ¶ 18.)[5]  Plaintiff admits that "a Jail Calls customer may use the service to receive calls from an incarcerated loved one on the customer's cell phone," (*id.* ¶ 23), but insists that calls to cell phones "pose[] no legitimate security risk," (*id.*).

DOCCS also has regulations governing the inmate receipt of mailings and other publications.  These regulations, found in Section 712 of Title 7 of the NYCCRR and DOCCS Directive No. 4572, provide that, before a facility may refuse to deliver a mailing or other publication to an inmate, it must first refer the material to a Facility Media Review Committee ("FMRC") at the local institution.  7 NYCCRR § 712.1(b).  (*See* AC Ex. A.)  The FMRC may reject a publication (or redact a portion of it) only if the offending material violates one of the standards specifically enumerated in the regulations, and then only if the FMRC specifically indicates which portion of the publication violates which standard.  7 NYCCRR § 712.3(c)(4).[6]

In January 2012, DOCCS began to implement a series of changes to its media review policies and procedures in response to complaints from outside organizations, including a case filed in this Court by Prison Legal News.  (AC ¶¶ 28-29; *see Prison Legal News v. Lee, et al.*, No. 11-CV-7118 (VB).)  On January 27, 2012, Catherine Jacobsen, Acting Deputy Commissioner for Program Services, and Defendant Bellnier issued to all correctional facility superintendents a memorandum titled "Publications containing advertisements in conflict with

---

[5] Plaintiff claims that its service "does not use call forwarding," (AC ¶ 22), but bases this claim on the unsupported assumption that DOCCS' prohibition on call forwarding applies only to a call sent from one person to another, (*id.*), as opposed to from one number to another.  Section 723.3(e)(11), however, plainly refers to the number dialed, not the person dialed.  Given that Plaintiff concedes that its service routes calls placed to one number and connects them to another number, (AC ¶ 18 & n.1), I fail to see any substance to the distinction Plaintiff attempts to draw between call forwarding and its service.  *See, e.g.*, *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2013) (court not required to accept conclusory allegations masquerading as factual conclusions).

[6] An inmate may appeal the decision of the FMRC.  *See* 7 NYCCRR § 712.3(d), (e).

disciplinary rules." (AC ¶ 28.)  It discussed advertisements mailed to inmates for services –

including call forwarding – that allegedly violate DOCCS "Standards of Inmate Behavior." (*Id.*)

The memorandum directed:

> Rather than barring the introduction of these publications altogether or attempting to redact or remove all such objectionable advertisements from each publication, correctional facilities are to include [a warning] along with each publication . . . . If a publisher was added to a disapproved vendor list based solely upon the presence of the aforesaid objectionable advertisements in its publication, the publisher should be removed from that list at this time.

(*Id.*; *see id.* Ex. E.)[7]

Notwithstanding the policy set forth in the January 27 memorandum, the Taconic

Correctional Facility refused to deliver copies of Inmate News to inmates at that facility. (*Id.* ¶

31.)  On February 24, 2012, Defendant Baxter informed Plaintiff that Inmate News was

"unacceptable mail to this facility," and instructed Plaintiff to "discontinue sending mail to

inmates here." (*Id.*; *see id.* Ex. B.)  Plaintiff alleges that other correctional facilities similarly

rejected Inmate News after the January 27 memorandum. (*Id.* ¶ 31.)

On April 17, 2012, Plaintiff's counsel wrote to Defendant Fischer asserting that DOCCS'

refusal to deliver Inmate News to inmates violated the First Amendment rights of Plaintiff and

the inmates and subjected the officials involved to liability under 42 U.S.C. § 1983. (*Id.* ¶ 32;

*see id.* Ex. C.)  On May 4, 2012, Maureen Boll, Deputy Commissioner and Counsel of DOCCS,

replied to Plaintiff's letter on behalf of Fischer, stating that "every Superintendent has . . . been

directed . . . to process each issue of the flyer through the [FMRC]." (*Id.* ¶ 33; *see id.* Ex. D.)

Boll further stated:

---

[7] DOCCS thereafter amended its media review directive, which, effective April 26, 2012, provided that if a facility superintendent "believes that printed material addressed to an inmate represents a possible threat to orderly facility operations, that material will be referred to the . . . []FMRC[] for its assessment and disposition." (AC Ex. A § I.)

> [T]he problematic advertising at issue will not, standing alone, prohibit the flyer from being made available to inmates. At the same time, however, inmates will be reminded that availing themselves of a telephone service that involves call forwarding or that allows inmates to place calls to wireless communications devices could subject them to inmate discipline.

(*Id.* ¶ 33; *see id.* Ex. D.)

That same day, Boll emailed all DOCCS superintendents a copy of the January 27 memorandum and noted that "this policy applies to all publication[s] including, but not limited to, the flyer *Inmate News*, a copy of which is also attached for your reference." (*Id.* ¶ 34; *see id.* Ex. E.) Boll added that "the Disapproved Vendor List should not be used to block *Inmate News* or any other publication. Instead, publications should be processed in accordance with Department Directive No. 4572, 'Media Review.'" (*Id.* ¶ 34; *see id.* Ex. E.)

On November 28, 2012, following the settlement of the *Prison Legal News* case, Defendants Bellnier and McKoy issued a memorandum titled "Facility Media Review Committee Action Required on the Attached Publication" – which was allegedly a copy of Inmate News. (*Id.* ¶ 38; *see id.* Ex. G.) The memorandum directed each facility to refer the publication to the FMRC and provided that "[u]pon completion of the media review process, the FMRC is to provide notice that the publication has been disapproved." (*Id.* ¶ 38; *see id.* Ex. G.) Plaintiff alleges that the November 28 memorandum "dictated the result" that the FMRC was to reach – that Inmate News should be disapproved. (*Id.* ¶ 38.) Following the November 28 memorandum, copies of Inmate News were rejected by the Cape Vincent, Fishkill, Green Haven and Shawangunk facilities. (*Id.* ¶ 39; *see id.* Exs. H-K.)

B. Procedural Background and Recent Changes in DOCCS Regulations

On February 20, 2013, Plaintiff initiated this action under 42 U.S.C. § 1983, seeking: (1) a declaratory judgment that Defendants' policy and practice of refusing to allow delivery of

Inmate News to inmates in DOCCS facilities is unconstitutional and unlawful; (2) a permanent injunction barring Defendants from continuing the above practice and policy; and (3) an award of compensatory and punitive damages against Defendants in their individual capacities for their refusal to deliver Inmate News.  (Compl. at 14-15.)[8]  Plaintiff also filed an Order to Show Cause for a preliminary injunction.  (Doc. 3.)

On February 27, 2013, one week after Plaintiff filed its Complaint and request for a preliminary injunction but before I issued my decision, Boll, along with Defendants Bellnier and McKoy, issued a memorandum to all superintendents rescinding the November 28 memorandum and allowing delivery of Inmate News so long as it was accompanied by the previously-issued DOCCS warning.  (AC ¶ 41; *see* Doc. 20 Ex. A at 2.)  On March 1, 2013, I denied Plaintiff's application for a preliminary injunction because Plaintiff had failed to show a likelihood of success on the merits.  (*See* Tr. of Preliminary Injunction Hr'g, Mar. 1, 2013 at 44:6-14.)[9]  I noted that the recent change in DOCCS policies that allowed for the delivery of Inmate News into DOCCS facilities may have mooted Plaintiff's claims.  (*Id.* at 43:19-23.)

Plaintiff filed an Amended Complaint on April 29, 2013, alleging that, despite the February 27 memorandum, DOCCS was still "refusing to deliver[] Inmate News to inmates at its facilities."  (AC ¶ 41.)  Plaintiff asserted that "[o]f at least 1,500 copies of Inmate News Plaintiff has mailed, properly post-paid . . . at least 50 have been returned to Plaintiff undelivered," (*id.*), that "Plaintiff has reason to suspect that none of the remaining copies were delivered either," (*id.*), and that the accompanying warning was "baseless[,] . . . discriminatory and . . . unlawful," (*id.* ¶ 42.)  Plaintiff filed a second application for a preliminary injunction on October 18, 2013,

---

[8] "Compl." refers to Plaintiff's initial complaint, filed Feb. 20, 2013.  (Doc. 1.)

[9] "Tr. of Preliminary Injunction Hr'g, Mar. 1, 2013" refers to the Transcript of the Preliminary Injunction Hearing, held March 1, 2013.  (Doc. 21.)

(Doc. 34), which I denied for similar reasons as the first application, (*see* Tr. of Preliminary

Injunction Hr'g, Dec. 10, 2013 at 29:2-4).[10]  Among other things, I noted that the DOCCS

warning "sent with [the] publication[s] raised no [F]irst [A]mendment concerns . . . because

[P]laintiff is not restricted from sending his publication to inmates, and I see no reason why

[D]efendants . . . cannot add whatever speech of their own they want."  (*Id.* at 27:8-14.)

Defendants then filed the instant Motion.  (Doc. 52.)

On January 15, 2014, while Defendants' Motion was pending, Defendants Bellnier and

McKoy issued a joint memorandum stating that, effective January 20, 2014, DOCCS would

allow inmates to place calls to cell phones, and that inmate calls that telephone service providers

routed to cell phones and other phone numbers would not, standing alone, violate DOCCS

regulations.  (McKoy Decl. ¶¶ 4-5; *see id.* Ex. A.)  The memorandum further directed that

DOCCS would discontinue its practice of attaching warnings to publications (such as Inmate

News) that advertised telephone services that permitted calls to cell phones.  (*Id.* ¶ 6; *see id.* Ex.

A.)  The memorandum was accompanied by two notices (one in English and one in Spanish) that

informed inmates of the changes, (*id.* ¶ 7; *see id.* Exs. B, C), and were to be posted in the law

libraries and in areas where inmate phones were located, (*id.* ¶ 7; *see id.* Ex. A).  A notice was

also included near the top of the DOCCS website, informing the general public of the policy

changes.  (*Id.* ¶ 8; *see id.* Ex. D at 1.)

When Plaintiff submitted its opposition to Defendants' Motion, however, DOCCS

Directive No. 4423 still purported to prohibit inmates from placing calls to cell phones, and the

DOCCS website, although notifying visitors of a change in policy, linked to the unamended

---

[10] "Tr. of Preliminary Injunction Hr'g, Dec. 10, 2013" refers to the Transcript of the Preliminary Injunction Hearing, held December 10, 2013.  (Ds' Reply Mem. Ex. A.)

Directive.  (*See* P's Opp. 4; McKoy Decl. ¶ 9.)[11]  Defendants maintain that, pursuant to Sections

V and VI of DOCCS Directive No. 0001, the memorandum from Bellnier and McKoy

constituted an immediate revision of Directive No. 4423, "Inmate Telephone Calls," (McKoy

Decl. ¶ 9; *see id.* Ex. E), and that the failure to update Directive No. 4423 and the DOCCS

website was an oversight.  They add that the policy changes have since been incorporated into

the DOCCS Directives and that the website has been corrected.  (*Id.* ¶ 9; *see id.* Exs. F, G.)[12]

## II.  LEGAL STANDARDS AND PRELIMINARY ISSUES

Defendants move to dismiss the Amended Complaint under Federal Rules of Civil

Procedure 12(b)(1), (3), and (6), for lack of subject matter jurisdiction, improper venue, failure to

state a claim upon which relief can be granted, and failure to exhaust administrative remedies,[13]

and on the ground that Defendants are entitled to qualified immunity.  (Doc. 52.)  Defendants

move, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56.

(*Id.*)

### A.  Rule 12(b)(1) Motion to Dismiss

Because federal courts are courts of limited jurisdiction, a claim must be dismissed if a

court lacks subject matter jurisdiction over it.  *See Frontera Res. Azerbaijan Corp. v. State Oil*

---

[11] "P's Opp." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss.  (Doc. 57.)

[12] On February 25, 2014, Plaintiff submitted an additional letter in response to Defendants' reply brief and the declaration from Defendant McKoy.  (Doc. 60.)  I did not grant Plaintiff leave to file a sur-reply, but in an abundance of caution, I will consider the arguments raised in the letter, although they do not affect my analysis.

[13] Defendants argued in their opening brief that Plaintiff failed to exhaust its administrative remedies because it did not appeal the FMRC's rejection of its flyer.  (*See* Ds' Mem. 22-23.)  They wisely abandoned this argument in their reply brief because these exhaustion requirements are expressly limited to "inmates," *see* 7 NYCCRR § 712.3(e) ("[w]hen an inmate elects to appeal the FMRC's disapproval of a publication"); (P's Opp. 14-15), and exhaustion is not required before a non-prisoner can bring a constitutional claim under 42 U.S.C. § 1983, *see Kraebel v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 959 F.2d 395, 404 (2d Cir. 1992) ("It is well-established that § 1983 generally allows plaintiffs with federal or constitutional claims the right to sue in federal court without first resorting to state judicial remedies or state administrative remedies.") (internal citation omitted); *Vidurek v. Miller*, No. 13-CV-4476, 2014 WL 901462, at *7 (S.D.N.Y. Feb. 27, 2014) ("[E]xhaustion of administrative remedies is not generally required to state a claim under Section 1983 . . . .").

*Co. of Azer. Republic*, 582 F.3d 393, 397 (2d Cir. 2009).  On a motion to dismiss for lack of subject matter jurisdiction filed pursuant to Federal Rule of Civil Procedure 12(b)(1), "a court is not limited to the face of the complaint and may consider evidence outside the pleadings to resolve disputed factual issues." *Pinkard v. N.Y.C. Dep't of Educ.*, No. 11-CV-5540, 2012 WL 1592520, at *5 (S.D.N.Y. May 2, 2012) (citing *State Emp. Bargaining Agent Coal v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007)).  "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

    B.  <u>Rule 12(b)(6) Motion to Dismiss</u>

        1.  <u>Legal Standard</u>

       To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

2.  <u>Conversion to a Motion for Summary Judgment</u>

Defendants filed their motion as a motion to dismiss, or in the alternative, for summary judgment.  In support of their motion, they submitted a Statement of Material Facts Pursuant to Local Civil Rule 56.1, along with two declarations from DOCCS officials and several exhibits. In response, Plaintiff submitted a Statement of Material Facts Pursuant to Local Civil Rule 56.1, two exhibits and a copy of a declaration from the owner of Jail Cells.

"A district court may convert a motion to dismiss into a summary judgment motion provided that the court gives sufficient notice to an opposing party and an opportunity for that party to respond."  *Mathie v. Dennison*, 381 F. App'x 26, 26 (2d Cir. 2010) (summary order) (internal quotation marks omitted).  "The essential inquiry is whether the [party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings."  *Malaney v. El Al Isr. Airlines*, 331 F. App'x 772, 774 (2d Cir. 2009) (summary order) (internal quotation marks omitted); *see Mathie*, 381 F. App'x at 27

("[D]istrict court's conversion of the motion was appropriate because [party] was provided sufficient notice of the possible conversion to have not been taken by surprise, and had the opportunity, of which he took advantage, to file additional evidence."); *Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004) (party was aware of "likelihood of such a conversion" by "attaching to the[] motion extensive materials that were not included in the pleadings").  In addition, "a district court must convert a motion to dismiss into one for summary judgment where the motion includes materials outside the pleadings and that material is not excluded by the court."  *In re WorldCom, Inc. Sec. Litig.*, 382 F. Supp. 2d 549, 556 (S.D.N.Y. 2005) (internal quotation marks omitted); *see Tedeschi v. Barney*, 95 F.R.D. 182, 183 (S.D.N.Y. 1982) (presentation of affidavits by plaintiffs converted defendants' motion to dismiss into one for summary judgment).

I find that Plaintiff was on notice of the possible conversion of the motion and had an opportunity to respond.  Indeed, Plaintiff's submission of a Rule 56.1 Statement of Material Facts seems to defeat any argument that Plaintiff would be taken by surprise if the motion were converted to a motion for summary judgment.  *See Mathie*, 381 F. App'x at 27; *Sira*, 380 F.3d at 68.  Nonetheless, I elect not to convert the motion to a motion for summary judgment because it is not necessary in this case.

## III.  DISCUSSION

### A.  Eleventh Amendment and Mootness

Plaintiff seeks a declaratory judgment that "Defendants' policy and practice of refusing to allow delivery of Plaintiff's 'Inmate News' to inmates" in DOCCS facilities is unconstitutional and unlawful, as well as a "permanent injunction barring Defendants from continuing" such policy and practice.  (AC at 18.)  Defendants argue that these claims must be dismissed for two reasons:  (1) they are barred by the Eleventh Amendment because the violation is no longer

ongoing where DOCCS has allowed delivery of Inmate News into its facilities; and (2) they have been mooted by the recent changes to DOCCS regulations and policies.[14]  (*See* Ds' Mem. 8-10 & n.3; Ds' Reply Mem. 3-8.)  Plaintiff responds that Defendants' voluntary cessation of a challenged practice is insufficient to moot Plaintiff's claims, (*see* P's Opp. 10-12), and in any event, Plaintiff has alleged that "DOCCS still persists in refusing to deliver Inmate News to inmates at its facilities," (*see id.* at 11).

Although DOCCS is a state entity and is thus entitled to Eleventh Amendment immunity, *Johnson v. New York*, No. 10-CV-9532, 2012 WL 335683, at *1 (S.D.N.Y. Feb. 1, 2012), courts are permitted, under *Ex parte Young*, 209 U.S. 123 (1908), "to grant[] prospective injunctive relief" against state officials "to prevent a continuing violation of federal law," *Green v. Mansour*, 474 U.S. 64, 68 (1985).  "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint [1] alleges an ongoing violation of federal law and [2] seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks and alterations omitted); *see Ford v. Reynolds*, 316 F.3d 351, 355 (2d Cir. 2003).  This principle is narrowly applied and does not extend to claims for retrospective relief.  *Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000).

Plaintiff's requests for declaratory and injunctive relief are barred by the Eleventh Amendment.  Plaintiff seeks a declaratory judgment that Defendants' policy and practice of refusing delivery of Inmate News is unconstitutional, (AC at 18), but as of February 27, 2013,

---

[14] Defendants also argue that Fischer's retirement from DOCCS moots Plaintiff's claims, but as explained above, the claims against Fischer in his official capacity continue against his successor.  *See* Note 3 above.  At the same time, I agree with Defendants that Plaintiff's claims for declaratory and injunctive relief against the other defendants must be dismissed because Plaintiff has sued those defendants in their individual capacities alone, (AC ¶¶ 5-14), and a "suit against [] officers for injunctive relief must be one against them in their official, rather than individual, capacities," *Zielinski v. DeFreest*, No. 12-CV-1160, 2013 WL 4838833, at *15 (S.D.N.Y. Sept. 10, 2013).

when Defendants issued a memorandum ordering that the superintendents of DOCCS facilities deliver Inmate News to inmates, they were no longer refusing to deliver Inmate News.  As such, the only available declaratory relief would be that Defendants' past policy or practice violated Plaintiff's rights, but such relief is barred under the Eleventh Amendment.  *See Ward*, 207 F.3d at 119 (Eleventh Amendment bars declaratory relief when law has been amended and only relief available is a declaration that state's past conduct violated federal law); *King v. Cuomo*, No. 08-CV-6058, 2011 WL 13944, at *7 (S.D.N.Y. Jan. 4, 2011) (same).  Likewise, Plaintiff seeks an injunction that would require DOCCS officials to deliver Inmate News, (AC at 18), but this request targets past conduct that is no longer ongoing and is thus barred under the Eleventh Amendment.

Plaintiff responds that its claims are not barred by the Eleventh Amendment (or moot, for that matter) because it was Defendants' voluntary cessation of a challenged practice that stopped the violation.  (*See* P's Opp. 11.)  Plaintiff argues that just as a defendant's voluntary cessation of conduct ordinarily will not moot a claim, it should not result in dismissal of the claim under the Eleventh Amendment.[15]

"Mootness is a doctrinal restriction stemming from the Article III requirement that federal courts decide only live cases or controversies; a case is moot if the parties lack a legally cognizable interest in the outcome of the case."  *In re Zarnel*, 619 F.3d 156, 162 (2d Cir. 2010) (internal quotation marks omitted); *see Powell v. McCormack,* 395 U.S. 486, 496 (1969).  The voluntary cessation of challenged conduct will only moot a lawsuit if "(1) there is no reasonable

---

[15] In support, Plaintiff cites *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013), where the Fifth Circuit applied the voluntary cessation exception to an Eleventh Amendment argument, noting that otherwise it "would work an end-run around the voluntary-cessation exception to mootness where a state actor is involved."  Assuming the exception applies where a state defendant claims Eleventh Amendment immunity, Defendants have – as discussed below – satisfied their burden of showing the exception should not apply.  And in any event, I would not grant Plaintiff's requested relief because, as explained below, Plaintiff has not stated a claim under the First Amendment.

expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Seidemann v. Bowen*, 499 F.3d 119, 128 (2d Cir. 2007) (internal quotation marks omitted); *see Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). A party "claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Seidemann*, 499 F.3d at 128 (internal quotation marks omitted).

Whether considered under the lens of mootness or the Eleventh Amendment, I find that Defendants have satisfied their burden of demonstrating that the alleged violation is no longer ongoing and will not recur. First, since issuing its memorandum on February 27, 2013, DOCCS has allowed copies of Inmate News into its facilities, and any argument from Plaintiff to the contrary is speculative at best. (*See* pages 16-17 below.) Second, although I recognize that DOCCS has a history of "flip-flopping" on this issue, (*see* P's Opp. 11), I find that DOCCS' most recent policy changes evince a commitment to allowing Inmate News into its facilities. Specifically, inmate calls to cell phones and call-forwarding services are no longer prohibited, and DOCCS has lifted the requirement that Inmate News be accompanied by a warning. Given that the policies that apparently animated DOCCS' past treatment of Plaintiff's flyer are no longer in place, there is no reason to believe that DOCCS officials would return to their past policies and refuse to deliver these flyers.[16]  In short, DOCCS seems to have reached the end of

---

[16] These changes in and of themselves do not moot Plaintiff's claims because neither the attached warning nor cell-phone ban infringed on Plaintiff's rights. First, as I previously noted, the warning does not raise any First Amendment concerns for Plaintiff. (*See* Tr. of Preliminary Injunction Hr'g, Dec. 10, 2013 at 27:8-14) (finding that the DOCCS' warning "sent with . . . publication[s] raised no [F]irst [A]mendment concerns . . . because [P]laintiff is not restricted from sending his publication to inmates, and I see no reason why [D]efendants . . . cannot add whatever speech of their own they want").) Second, Plaintiff lacks standing to bring claims on behalf of the inmates challenging any cell-phone ban. *See Walker v. Dep't of Corr. Serv.*, No. 11-CV-993, 2012 WL 527210, at *1 n.2 (S.D.N.Y. Feb. 14, 2012) (plaintiff "lacks the requisite Article III standing to bring constitutional claims on behalf of other inmates").

the road as far as these issues are concerned.  DOCCS has made a public commitment to its

changes, and Plaintiff has not offered any evidence from which the Court might conclude

otherwise.[17]  *See Granite State Outdoor Adver., Inc. v. Town of Orange*, 303 F.3d 450, 451-52

(2d Cir. 2002) ("[T]here is no reason to think that, having completely revised its regulations

through proper procedures, the Town has any intention of returning to the prior regulatory

regime.").  In the absence of evidence that DOCCS might reinstate its old policies, the Court

must show deference to DOCCS' representation that the offending "conduct has been

discontinued."  *Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 59 (2d

Cir. 1992); *see Rivers v. Doar*, 638 F. Supp. 2d 333, 337-38 (E.D.N.Y. 2009) (dismissing case as

moot where there is "nothing in the record affirmatively suggesting that defendants intend to re-

institute the challenged policy" and "record is replete with evidence that the policy has been

officially abandoned").

      Plaintiff finally argues that DOCCS persists in refusing to deliver copies of Inmate News,

(AC ¶ 41), but I find this argument to be wholly speculative and thus insufficient to defeat

Defendants' motion to dismiss.  Although Plaintiff asserts that "[o]f at least 1,500 copies of

Inmate News [mailed], at least 50 have been returned to Plaintiff undelivered," (*id.*), and that it

"has reason to suspect that none of the remaining copies were delivered either," (*id.*), Plaintiff

provides no facts supporting its suspicion that none of the remaining copies of Inmate News

were not delivered.  Moreover, several other plausible explanations – such as transfer or release

– leap to mind as to why copies of Inmate News could be returned undelivered, (*see, e.g.*, Herzog

Decl. ¶ 18 (DOCCS "conducts approximately 180,000 inmate moves each year" and "mail is

forwarded only when an inmate submits the appropriate form and 'guarantees payment of

---

[17] Plaintiff's assertion, based on the website, that the restrictions persisted even after Defendants declared that they had changed their policies is easily dismissed as a mere oversight on the part of DOCCS, which DOCCS has subsequently resolved.

forwarding postage'"")),[18] and the return of a small percentage of mailed flyers does not suffice, based on "experience and common sense," *Iqbal*, 555 U.S. at 679, to "nudge[]" Plaintiff's allegation "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570.  Plaintiff has failed to plead facts plausibly alleging that the flyers are not being distributed despite the policy change, and its claims for declaratory and injunctive relief are barred by the Eleventh Amendment or, in the alternative, are moot.

    B.   <u>Failure to State a Claim:  Defendants Fischer, Nelson, LeConey, Connolly, Smith and Lee</u>

        In addition to seeking declaratory and injunctive relief, Plaintiff requests "compensatory and punitive damages against Defendants in their individual capacities" for their "refusal to deliver Plaintiff's 'Inmate News.'"  (AC at 18.)  Defendants argue that Plaintiff has failed to allege the personal involvement of Fischer, Nelson, LeConey, Connolly, Smith and Lee, and thus the claims against these defendants must be dismissed.  (*See* Ds' Mem. 11-13.)

        To state a claim under section 1983, a complaint must allege that the defendant (1) deprived the plaintiff of rights secured by the Constitution and laws of the United States, (2) while acting under color of state law.  42 U.S.C. § 1983; *see Rae v. Cnty. of Suffolk*, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010).  Moreover, it is well settled that a plaintiff must allege the individual defendant's personal involvement in the alleged constitutional deprivation.  *See, e.g.*, *Grullon v. City of New Haven,* 720 F.3d 133, 138 (2d Cir. 2013); *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010); *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004).  A plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.[19]

---

[18] "Herzog Decl." refers to the Declaration of Thomas Herzog.  (Doc. 46.)

[19] Before the Supreme Court's decision in *Iqbal*, the Second Circuit held that the personal involvement of a supervisory defendant may be shown by evidence that

Plaintiff's Amended Complaint does not plausibly allege Defendant Fischer's personal involvement in any constitutional violation.  Plaintiff alleges that its counsel wrote a letter to Fischer on April 17, 2012, to which Deputy Commissioner Boll responded, (AC ¶¶ 32-33), and that Bellnier and McKoy issued a November 28 memorandum under Fischer's name that targeted Inmate News, (*id.* ¶ 38).  These allegations do not suffice to plausibly show Fischer's individual liability.  Neither Fischer's receipt of the letter from Plaintiff's counsel nor Fischer's referral of the letter to a subordinate – here Boll – constitutes personal involvement.  *See, e.g., Sealey v. Giltner,* 116 F.3d 47, 51 (2d Cir. 1997) (warden who referred letter to subordinate not personally involved); *George v. Cnty. of Westchester*, No. 13-CV-4511, 2014 WL 1508612, at *8 (S.D.N.Y. Apr. 10, 2014) (county executive's referral of letter to another official does not establish personal liability); *Smart v. Goord*, 441 F. Supp. 2d 631, 643 (S.D.N.Y. 2006) (defendant "cannot be held liable on the sole basis that he did not act in response to letters of protest sent by [plaintiff]").  As for the allegation that DOCCS issued a memorandum under Fischer's name, that Fischer's name unsurprisingly appears on DOCCS' letterhead does nothing to show his personal involvement in a memorandum issued and signed by subordinates.  Plaintiff seems to be proceeding on the theory that Fischer is liable because he was the Commissioner of

---

(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  In *Iqbal*, the Supreme Court rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution."  556 U.S. at 677.  Whether all of the *Colon* avenues to personal involvement survive *Iqbal* remains unsettled.  *See Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012).  I need not address the issue, however, because Plaintiff does not adequately plead the defendants' personal involvement even under *Colon*.  *See Grullon*, 720 F.3d at 139 (noting that *Iqbal* "may have heightened the requirements for . . . personal involvement" but choosing not to reach the question because Plaintiff's complaint was inadequate even under *Colon*).

DOCCS, but a supervisor is not liable based on his title alone, *see Joyner v. Greiner,* 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002) ("[A]bsent some personal involvement by the Superintendent of a DOC[C]S facility in the allegedly unlawful conduct of his subordinates, he cannot be held liable under Section 1983.") (internal quotation marks and alterations omitted), and Plaintiff has not alleged that Fischer promulgated the relevant policies or applied them to Plaintiff, *see A'Gard v. Perez,* 919 F. Supp. 2d 394, 407 (S.D.N.Y. 2013) (dismissing claim against Commissioner and Deputy Commissioner of DOCCS where plaintiff failed to allege defendants were "personally involved in [his] discipline").  For this reason, Plaintiff's claims under section 1983 against Defendant Fischer are dismissed.

Plaintiff also fails to plausibly allege the personal involvement of Defendants Nelson, LeConey, Connolly, Smith and Lee.  Plaintiff lists the names of these defendants in the caption of the case, (AC at 1), identifies them as Superintendents of various DOCCS facilities, (*id.* ¶¶ 8, 10-13), and alleges that Inmate News flyers were "rejected" at those facilities, (*id.* ¶ 39), but does not plausibly allege that or how these defendants were involved in any of those decisions.  In such a case, "where the complaint names [defendants] in the caption but contains no allegations indicating how [they] violated the law or injured the plaintiff," dismissal is appropriate.  *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) (internal quotation marks omitted). Plaintiff must allege more than these defendants' leadership positions to state a claim against them, *see Joyner,* 195 F. Supp. 2d at 506, and the failure to do so warrants dismissal of Plaintiff's claims.

Plaintiff responds that the rejection letters it received from DOCCS do not list the names of the individuals who were involved in those decisions, and thus it is impossible for Plaintiff to

know, at this stage, who was personally involved.[20]  (*See* P's Opp. 12-13.)  Plaintiff adds that

because this information is uniquely in the possession of Defendants, Plaintiff should be allowed

to conduct discovery to determine the names of these individuals.  (*See id.* at 13.)  While

Defendants may have a better idea of who rejected Plaintiff's flyers,[21] Plaintiff is not allowed "to

shirk [its] pleading obligations" and obtain discovery absent "a plausible claim."  *See Angiulo v.*

*Cnty. of Westchester*, No. 11-CV-7823, 2012 WL 5278523, at *3 n.4 (S.D.N.Y. Oct. 25, 2012)

(under *Iqbal*, "a plausible claim must come before discovery, not the other way around"); *see*

*also Iqbal*, 556 U.S. at 678-79 ("[Fed. R. Civ. P.] 8 . . .  does not unlock the doors of discovery

for a plaintiff armed with nothing more than conclusions.").  I therefore dismiss the claims

against Defendants Fischer, Nelson, LeConey, Connolly, Smith and Lee.[22]  And, these claims

would, as discussed below, be dismissed in any event, for failure to state a claim.

---

[20] Plaintiff also argues that the Court should reject Defendants' argument because they failed to raise lack of personal involvement as a basis for dismissal in their pre-motion letter.  (*See* P's Opp. 12.)  Although my Individual Practices require parties to submit pre-motion letters, (*see* Individual Practices ¶ 2(A)), I do not preclude parties from offering additional arguments in their motions.  Pre-motion letters are a procedural tool that I use to manage the litigation process; they are not a strategic device to prevent the court from deciding cases on the merits. Moreover, I agree with Defendants that the cases cited by Plaintiff in this regard, (*see* P's Opp. 12; Ds' Reply Mem. 1-3), are either distinguishable from the instant case, *see Scott v. WorldStarHipHop, Inc.*, No. 10-CV-9538, 2012 WL 1592229, at *4 (S.D.N.Y. May 3, 2012) (denying motion for summary judgment without prejudice where party failed to comply with "Court's Individual Rules of Practice or the Local Rules of this District regarding motions for summary judgment"); *Malmsteen v. Berdon*, No. 05-CV-958, 2009 WL 1578615, at *2 n.1 (S.D.N.Y. June 8, 2009) (motion for default judgment denied because party failed to comply with individual rules and "did not show a basis for personal jurisdiction over [defendant]"), or support Defendants' position, *see Five Star Dev. Resort Communities LLC v. iStar RC Paradise Valley LLC*, No. 09-CV-2085, 2012 WL 1003557, at *3 (S.D.N.Y. Mar. 26, 2012) (defendant "was not required, when filing a preliminary pretrial statement pursuant to the [Judge's] Individual Rules of Practice . . . , to list with particularity each of its defenses at the risk of forfeiture of those defenses").  Finally, although I would let Plaintiff amend its complaint if the pre-motion letter did not mention a ground for dismissal that Plaintiff could fix by amending the complaint, I find that amendment would be futile here.  *See* Part III.D below.

[21] The names of the individuals are less important than Plaintiff suggests because Plaintiff named John Doe defendants in its complaint.  Plaintiff failed to offer any allegations against these unnamed defendants, however, and thus these defendants are also dismissed from the case.  *See Gabriel Capital, L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251, 269 (S.D.N.Y. 2000) (complaint "fail[ed] to plead a claim against the Doe defendants" where it contained no information specific to identities or actions of defendants).

[22] Leave to amend would not cure the problem because Plaintiff seems to concede that it does not know the names of the individuals involved.  (*See* P's Opp. 12-13.)

C. <u>Failure to State a Claim:  First Amendment</u>

Having dismissed Plaintiff's claims for declaratory and injunctive relief, as well as

Plaintiff's claims for monetary damages against Defendants Fischer, Nelson, LeConey,

Connolly, Smith and Lee, the only claims that remain are those against Defendants Baxter,

Bellnier and McKoy, in their individual capacities, for violations of the First Amendment.

Specifically, Plaintiff alleges that, on February 24, 2012, Baxter informed Plaintiff that Inmate

News was "unacceptable mail to this facility," and instructed Plaintiff to "discontinue sending

mail to inmates here," (AC ¶ 31), and that, on November 28, 2012, Bellnier and McKoy issued a

memorandum directing DOCCS facilities to refuse delivery of Inmate News, (*id.* ¶ 38).  I

therefore consider whether Plaintiff has plausibly alleged a First Amendment violation.[23]

"One important determinant of the degree of protection afforded by the First Amendment

is whether the activity sought to be regulated constitutes commercial or noncommercial speech."

*Anderson v. Treadwell*, 294 F.3d 453, 460 (2d Cir. 2002).  Commercial speech is that "which

does no more than propose a commercial transaction."  *Id.*  (internal quotation marks omitted).

"Even a communication combining commercial and noncommercial elements, if it is an

advertisement, makes reference to a specific product, and the speaker has an economic

motivation for the communication, is properly characterized as commercial speech."  *Id.*

I previously held that Inmate News constitutes commercial speech, (*see* Tr. of

Preliminary Injunction Hr'g, Mar. 1, 2013, at 38:10-24), and find no reason to reconsider my

decision.  The copy of Inmate News attached to the Amended Complaint is a one-page flyer with

a bold headline stating "Inmate Phones and Collect to a Family's Cell!" and three paragraphs

---

[23] Plaintiff appears to bring an as-applied, not facial, challenge to the DOCCS regulations.  (*See* P's Opp. 6 n.5
("Plaintiff submits that the DOCCS regulations cited are unlawful, at least as applied to the Jail Calls service . . . .
Plaintiff does not directly challenge the validity of those regulations in this case, but merely claims that their
existence should not deprive Plaintiff's flyers of their First Amendment protection.").)  Whether the challenge is as-
applied or facial, I find that Plaintiff has failed to allege a First Amendment violation.

describing the telephone service that Plaintiff provides.  (*See* AC Ex. E at 4.)  Although the flyer

also includes three sentences describing a "Journal of prisoners [*sic*] on Prisons," it offers no

meaningful information about this Journal.  It is clear that this publication – primarily consisting

of an advertisement for Plaintiff's telephone service – is properly categorized as commercial

speech.  Indeed, the practically useless references to the Journal seem designed only to make the

commercial nature of the flyer appear less obvious.

   *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447

U.S. 557 (1980), sets forth a four part test used to determine when commercial speech may be

constitutionally restricted.  "[T]he [Supreme] Court has rejected the argument that strict scrutiny

should apply to regulations of commercial speech that are content-specific, adhering instead to

the somewhat less rigorous standards of *Central Hudson*."  *Anderson*, 294 F.3d at 460.  For

commercial speech to merit First Amendment protection, it must concern lawful activity and not

be misleading.  *Central Hudson*, 447 U.S. at 563-64.  The government then "must assert a

substantial interest to be achieved by" the restriction.  *Id.* at 564.  If it does so, those prongs are

satisfied, the third and fourth parts of the test ask "whether the regulation directly advances the

governmental interest asserted" and "whether it is not more extensive than is necessary to serve

that interest."  *Id.* at 566.  In the prison context, First Amendment rights "must be exercised with

due regard for the inordinately difficult undertaking that is modern prison administration."

*Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (internal quotation marks omitted).  Regulations

restricting a publisher's access to inmates or allowing censoring of incoming materials are valid

so long as they are "reasonably related to legitimate penological concerns."  *Id.* at 404 (internal

quotation marks omitted).

As to the first prong of the *Central Hudson* test, Plaintiff argues that Inmate News concerns lawful activity, and in doing so, rehashes the same arguments that it raised on its motions for a preliminary injunction. Specifically, Plaintiff asserts that Jail Calls does not provide a "call forwarding service," that the DOCCS regulations prohibiting inmate calls to cell phones do not apply to Jail Calls' customers, who are the friends and families of inmates, and that it is possible for inmates to use the Jail Calls service in compliance with DOCCS regulations.[24] (*See* P's Opp. 6-9.)

Largely for the reasons set forth in my previous rulings, I reject Plaintiff's assertion that Inmate News concerns lawful activity. (*See* Tr. of Preliminary Injunction Hr'g, Dec. 10, 2103 at 18:7-20:9.) Plaintiff admits in its Amended Complaint that its service involves the forwarding of prison calls from numbers assigned by Jail Calls to another number maintained by the customer, (AC ¶¶ 18, 22), and that inmates can use its service to speak to loved ones on their cell phones in violation of the then-applicable DOCCS regulation, (*id.* ¶ 23). Thus, accepting Plaintiff's factual allegations as true, I conclude that Jail Calls involves unlawful activity. Indeed, the flyer advertises Plaintiff's service as a way to evade "block[s]" placed by DOCCS on inmate calls. (*See* AC Ex. E at 4.)

Plaintiff's argument that DOCCS regulations do not apply to Jail Calls' customers is beside the point. While theoretically two persons on the outside of a DOCCS facility could use Plaintiff's service, Plaintiff markets its service to inmates who cannot lawfully use it, and complains here of its inability to reach those inmates. Further, that the unlawful participant in the call is the inmate rather than the customer does not make the service lawful.

---

[24] For purposes of this analysis, I consider the previous version of the DOCCS regulations, which prohibited inmate calls to cell phones and call-forwarding services.

Likewise, I reject Plaintiff's argument that because it is theoretically possible to use the service in compliance with DOCCS regulations, the service is lawful.  (*See* P's Opp. 8.)  I do not find that an inmate could have used Jail Calls lawfully under the previous DOCCS regulations, because the service forwards the call from one number to another.  I previously distinguished the cases on which Plaintiff relies for its argument that restrictions on partially lawful activities are unconstitutional, and see no reason to revisit my previous ruling.[25]  In sum, I find that Plaintiff's service involves unlawful activity under the previous DOCCS regulations.

Plaintiff next argues that, even if the service is unlawful, Defendants must justify their restrictions on Plaintiff's flyers in light of the remaining three *Central Hudson* factors – that their interest is substantial, that the prohibition directly advances that interest and that it is no more extensive than necessary to serve that interest.  (*See* P's Opp. 9-10.)  In so arguing, Plaintiff misreads *Central Hudson* and overlooks precedent from this circuit labeling the first prong of the *Central Hudson* test as a "threshold" issue for any First Amendment analysis.  *See Clear Channel Outdoor, Inc. v. City of N.Y.*, 594 F.3d 94, 103 (2d Cir. 2010) ("As a threshold matter, in order to warrant First Amendment protection under the *Central Hudson* framework, the communication must be 'neither misleading nor related to unlawful activity.'") (quoting *Central Hudson*, 447 U.S. at 564).  If speech is related to unlawful activity, then the inquiry ends and a

---

[25] Plaintiff cites *Educ. Media Co. at Va. Tech, Inc. v. Swecker*, 602 F.3d 583 (4th Cir. 2010); *Katt v. Dykehouse*, 983 F.2d 690 (6th Cir. 1992); *Lamar Outdoor Adver., Inc. v. Miss. State Tax Comm'n*, 701 F.2d 314 (5th Cir. 1983); *Nat'l Ass'n of Tobacco Outlets, Inc. v. City of Worchester, Mass.*, 851 F. Supp. 2d 311 (D. Mass. 2012); *Abilene Retail #30, Inc. v. Six*, 641 F. Supp. 2d 1185 (D. Kan. 2009), as standing for the proposition that an activity is lawful, and thus entitled to protection under *Central Hudson*, so long as the activity is lawful in part.  I find none of these cases persuasive because every use of Plaintiff's service by an inmate would have been unlawful, whereas the cases Plaintiff cites involve partially lawful activities.  *See Educ. Media*, 602 F.3d at 589 (alcohol advertisement in college papers entitled to protection where some readers were over twenty-one); *Katt*, 983 F.2d at 697 (offer for rebating service entitled to protection where rebating was lawful in state where service was advertised); *Lamar*, 701 F.2d at 321 (liquor advertisement in intrastate media entitled to protection where alcohol consumption was lawful in certain parts of state); *Nat'l Ass'n of Tobacco Outlets*, 851 F. Supp. 2d at 314-15 (advertisement for blunt wrap entitled to protection where sale of blunt wrap was not prohibited everywhere, and advertisement did not promote unlawful sales); *Abilene*, 641 F. Supp. 2d at 1192-93 (advertisement for Lion Den, an adult business, was entitled to protection where not all items sold at store were illegal).  Further, none of the cases Plaintiff cites involve a publication that, like Plaintiff's, is virtually entirely about a product that is illegal for the reader to have.

court need not consider the remaining factors.[26]  Because Plaintiff fails to satisfy the first prong of *Central Hudson*, I need not proceed any further.  But, in an excess of caution, I will consider the remaining prongs.

On the second prong, DOCCS' interest in banning Inmate News is obvious given that the advertised service violates the call forwarding and cell phone prohibitions and advertises itself as a way to evade call blocks.  As for the third prong, the prohibition on its face directly advances that interest.  Turning last to the fourth prong, the prohibition is arguably more extensive than necessary because DOCCS could allow delivery of the flyer with the attached warning (as it previously did), but undoubtedly banning the flyer altogether would be a more effective way of preventing inmates from using the service than giving them the necessary information to use it while asking them not to, and I must defer to DOCCS' judgment.  *See Thornburgh*, 490 U.S. at 407-08 (courts must "afford[] considerable deference to the determinations of prison administrators").  All of this is sufficiently obvious that I do not have to convert the motion to a motion for summary judgment and consider the affidavits submitted by DOCCS officials.[27]

Plaintiff responds that DOCCS' recent decision to allow inmates to place calls to cell phones "amounts to a concession" that its previous practices were unnecessary, unjustifiable and in violation of the First Amendment.  (*See* P's Opp. 10.)[28]  I disagree.  Even if I could consider the new policy (which is outside the Amended Complaint), that prison administrators rebalance competing concerns (security vs. the fact that many loved ones no longer have landlines), and

---

[26] The same is true for the second factor; only "if both the [first and second prongs] are met" does a court consider "the third and fourth parts of the test." *Anderson*, 294 F.3d at 461.

[27] It is also plain (assuming I had to know the basis for the underlying regulations in order to understand why prison administrators would want to ban a flyer for a service that evades several of them) that prison administrators have an interest in knowing with whom prisoners are communicating and where those persons are located, and in blocking prisoners from contacting inappropriate persons such as victims or confederates, so the officials' security interest in the underlying regulations is also sufficiently obvious that conversion of the motion is not necessary.

[28] At the time Plaintiff raised this argument, DOCCS was only considering making changes to its policies; it had yet to do so.

change prison policy accordingly, does not mean that the reasons underlying the previous balance were insubstantial.  *See Thornburgh*, 490 U.S. at 407-08.  Further, I am reluctant to penalize DOCCS for reevaluating and revising its policies.  If every change in policy resulted in a claim that a previous policy was unjustified or illegal, governments would be less likely to review their regulations and procedures out of fear of being sued.  *Cf.* Fed. R. Evid. 407 Advisory Comm. Notes (ban on evidence of subsequent remedial measures furthers policy of encouraging or at least not discouraging such measures).

For these reasons, I reject Plaintiff's argument that the DOCCS regulations fail the *Central Hudson* test, and conclude that Plaintiff's First Amendment claims for monetary damages against the remaining defendants in their individual capacities must be dismissed.[29]

D. <u>Leave to Amend</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has not requested leave to file a Second Amended Complaint or suggested that it is in possession of facts that could cure the deficiencies identified in this Opinion.  Granting

---

[29] Having dismissed all of Plaintiff's claims, I need not consider whether qualified immunity applies or whether venue is proper in the Southern District of New York, although I note that even if my First Amendment analysis is wrong, qualified immunity would almost certainly protect the individual defendants, given the lack of clearly established law applicable to these facts.

leave to amend would be futile here where I have dismissed the Amended Complaint for lack of jurisdiction and failure to state a claim, and Plaintiff has "not indicated how [it] could satisfy" these requirements through further amendment.  *In re Am. Express Co. S'holder Litig.*, 39 F.3d 395, 402 (2d Cir. 1994); *accord Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (summary order) (no error in denying leave to amend as futile where "the barriers to relief for [plaintiff's] claims cannot be surmounted by reframing the complaint").  Accordingly, I decline to grant Plaintiff leave to amend *sua sponte*.  *See Shechet v. Doar*, 518 F. App'x 26, 27 (2d Cir. 2013) (summary order) (no error to deny leave to amend where amendment would be futile and plaintiff failed to assert that defects could be cured by amendment); *Book v. Tobin*, 263 F. App'x 174, 175 (2d Cir. 2008) (summary order) (no error to deny leave to amend as futile for lack of jurisdiction).

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion is GRANTED.  The Clerk of Court is directed to terminate the pending Motion, (Doc. 52), and close the case.


**SO ORDERED.**

Dated: June 30, 2014
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.